Filed 1/25/21  P. v. Pitts CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JESSE PITTS,<br><br>     Defendant and Appellant. | B301227 consolidated with B306084<br><br>(Los Angeles County<br>Super. Ct. No. TA016655) |

APPEAL from orders of the Superior Court of Los Angeles County, John J. Lonergan, Judge.  Reversed and remanded with directions.

Edward S. Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Jesse Pitts filed two notices of appeal from the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1]  We consolidated the appeals for all purposes.

Appellant contends the trial court erred in denying his petition because the record before it did not establish his ineligibility for relief as a matter of law.  Respondent Attorney General agrees and concedes remand is required.  We agree, reverse the trial court's orders dated August 8, 2019 and March 10, 2020, and remand for issuance of an order to show cause and any other further proceedings required by section 1170.95.

Appellant also requests that we treat his appeals as a writ of habeas corpus and consider thereunder two arguments regarding the jury instructions given at his trial.  We deny the request.  Appellant's request for judicial notice is also denied.

**FACTUAL BACKGROUND**[2]

In 1992, appellant and several others participated in the fatal beating and sodomy of Cornelius Johnson.  Evidence presented at a joint 1994 jury trial showed that Johnson died from blunt head and facial injuries following a beating, and that the contemporaneous insertion of more than a gallon of pressurized water into his rectum was an independent cause of death.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]We draw the factual background from our prior opinion affirming appellant's conviction in *People v. Pitts* (June 24, 1996, B087300) [nonpub. opn.], which is included in the record on appeal.

2

On the day of the incident, approximately ten individuals began beating Johnson when he emerged from an alley. "Most of the attackers left before Johnson began bleeding," but appellant continued punching Johnson even after Johnson fell to the ground and was unable to get up. Appellant stopped punching Johnson when another person on the scene told appellant, "That's enough," and cautioned appellant that appellant "would kill Johnson if he did not stop." Appellant then "stopped, stepped back a few feet, and watched."

While appellant watched, his codefendant, Alfred Wilson, pulled down Johnson's pants. When Johnson attempted to pull up his pants and leave, Wilson directed another codefendant, James Lavelle Kelly, to "stomp him out." Kelly stomped on Johnson's face with his feet six to 10 times; Johnson remained conscious during this attack. At Wilson's direction, Kelly then activated a water hose. As the water began to flow, Kelly kicked Johnson several more times. Kelly and appellant then watched "as Wilson inserted the hose into Johnson's rectum multiple times." Appellant and the others fled the scene when police arrived.

**PROCEDURAL HISTORY**

In 1994, a jury convicted appellant of first degree murder (§ 187, subd. (a)) and anal penetration by a foreign object (§ 289), and the trial court found that appellant suffered a prior serious felony conviction. The trial court sentenced appellant to an aggregate term of 36 years to life. We affirmed appellant's convictions and sentence on direct appeal.

On April 8, 2019, appellant, acting in propria persona, filed a petition for resentencing under section 1170.95. That provision permits persons convicted of murder under theories of felony

3

murder or the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), to petition the sentencing court to vacate the conviction and resentence on any remaining counts. In the petition, appellant asserted that he met the criteria for relief and requested the appointment of counsel.

On June 6, 2019, the trial court appointed counsel for appellant and continued the matter to August 2, 2019.

On August 1, 2019, the prosecution filed a written opposition to appellant's petition. In addition to arguing that section 1170.95 was unconstitutional, the prosecution contended that appellant was ineligible for relief as a matter of law because he was either an actual killer or a major participant who acted with reckless indifference to human life. The prosecution attached a copy of our prior opinion to its opposition.

On August 2, 2019, the court heard the case and advised that its tentative was to "summarily deny" the petition; only the minute order documenting this hearing is in the record. The court later orally explained[3] that appellant's counsel requested a continuance to respond to the tentative. The court granted the request and continued the matter to September 16, 2019. However, through inadvertence, on August 5, 2019, the court issued a minute order denying the petition for the three reasons stated in its tentative: (1) the jury was instructed with a still-valid theory that appellant tortured Johnson and therefore acted with implied malice; (2) appellant directly aided and abetted the killing by participating in the fatal beating of Johnson; and (3)

---

[3]The court summarized the procedural history of the case during the March 12, 2020 hearing. Neither side disputed the court's recollection.

appellant was a major participant who acted with reckless indifference to human life. The September 16, 2019 hearing date was vacated. Appellant timely filed a notice of appeal from the August 5, 2019 minute order on September 3, 2019.

On September 9, 2019, appellant filed, in propria persona, a petition for writ of habeas corpus in the trial court. In the petition, he argued that reversal of his first degree murder conviction was required under *People v. Chiu* (2014) 59 Cal.4th 155 because "[t]here is a possibility that the jury relied on the natural and probable consequences instruction in reaching its verdict."

On September 20, 2019, the trial court reviewed the writ petition in chambers. The minute order documenting that review states in relevant part, "The petitioner raises issues that were previously addressed by the court. [¶] The case is currently under review by a higher court. [¶] This court has no jurisdiction to hear this matter. [¶] The petition is denied." Appellant did not file a new petition in this court. (See *Robinson v. Lewis* (2020) 9 Cal.5th 883, 895 ["[I]n noncapital cases, if the superior court denies a petition for a writ of habeas corpus, the petitioner has no statutory right to appeal. Instead, the petitioner must file a new, original petition, generally in the Court of Appeal."].)

On February 26, 2020, the trial court discovered that it had inadvertently reduced its tentative to a minute order denying appellant's section 1170.95 petition on August 5, 2019. The court notified appellant's counsel and the prosecution of the error and set the matter for hearing on March 12, 2020.[4]

---

[4]"'It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists

5

On March 11, 2020, appellant's counsel filed a response to the trial court's original tentative and the prosecution's opposition. Counsel argued that relief was warranted under section 1170.95 because appellant may have been convicted under the natural and probable consequences theory, which was "a principal part of [the] jury instruction[s]" and "cannot be separated out at this present time." He further asserted that the prosecution "could not prove him guilty beyond a reasonable doubt under the theories espoused by the prosecution under the law in existence now," and the prosecution could not argue a different theory than it did at his trial.

The trial court heard the matter on March 12, 2020. It stated that it was denying the section 1170.95 petition "for the same reasons again." Specifically, it stated, "The jury was instructed of [*sic*] not only the natural and probable consequence theory, but they were also instructed the only theory of first degree murder was torture in which the jury would have had to find implied malice. I also indicated in my denial that the victim was repeatedly beaten by the petitioner and three other participants. The coroner testified that the beating was enough to kill the victim. Then finally, the petitioner played a major role as one of the few individuals that continued the assault on the victim after most of the others had left the scene. And even after the petitioner was warned that further assault would kill the

---

independently of statute and may be exercised in criminal as well as in civil cases. [Citation.] The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties.'" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, quoting *In re Candelario* (1970) 3 Cal.3d 702, 705.)

victim, he continued to act with reckless indifference to human life." The minute order documenting the hearing states in relevant part, "The court conducts a hearing re denial of petition pursuant to Penal Code section 1170.95. The ruling of 8/5/19 stands—the petition is denied."

Appellant timely appealed the March 12, 2020 ruling on May 7, 2020. We consolidated his two appeals for all purposes on June 24, 2020.

## DISCUSSION

### I.    Section 1170.95 Petition

#### A.    Governing Law

In 2018, the Legislature enacted Senate Bill No. 1437 (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To that end, SB 1437 amended sections 188 and 189. Section 188, subdivision (a)(3) now provides that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189 now provides that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a

7

major participant in the underlying felony [who] acted with reckless indifference to human life." (§ 189, subds. (e)(1)-(3).)

SB 1437 also added section 1170.95, which permits a person whose murder conviction could have been made under a felony murder theory or pursuant to the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).)

If the petition includes the required information, subdivision (c) of section 1170.95, prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted March 18, 2020, S260493 (*Verdugo*).) At the first step, the court's role "is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Id.* at p. 329.) In addition to the allegations of the petition, the court may review readily ascertainable information in the record of conviction and the court file, such as the information or indictment, the verdict form, and the abstract of judgment. (*Ibid.*) If these documents reveal that the petitioner is ineligible for relief, the trial court may summarily dismiss the petition. (*Id.* at p. 330.)

If the petition and record of conviction do not establish as a matter of law the petitioner's ineligibility for resentencing,

evaluation of the petition proceeds to the second step of the prima facie review. At that step, "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo, supra,* 44 Cal.App.5th at p. 330.) The trial court must accept as true the petitioner's factual allegations and make a preliminary assessment regarding whether the petitioner would be entitled to relief if the factual allegations were proved. (*Id.* at p. 328.) The trial court's authority to make factual determinations at this stage extends only to "readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)

If the trial court concludes the petitioner has made a prima facie showing that he or she is entitled to relief, it must issue an order to show cause. (*Verdugo, supra,* at p. 328.) "Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo, supra,* 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).) The parties may rely on the record of conviction or present "new or additional evidence" to support their positions. (§ 1170.95, subd. (d)(3).)

We review de novo the predominantly legal question of whether a petitioner has made a prima facie showing. (See

*People v. Drayton, supra*, 47 Cal.App.5th at p. 981; see also *Smiley v. Citibank, N.A.* (1995) 11 Cal.4th 138, 146 ["Independent review is called for when the underlying determination involves a purely legal question or a predominantly legal mixed question."].)

### B.     Analysis

Appellant contends the court erred in denying his petition because the materials before the trial court did not conclusively show that he was ineligible for relief.  Specifically, he contends the jury was instructed on the now-invalid natural and probable consequences doctrine, "and the People cannot show the jury did not rely on it."  Appellant also argues that the court erroneously found that he was a major participant who acted with reckless indifference.

The Attorney General concedes the court erred.  It agrees with appellant that "the record of conviction did not establish as a matter of law that appellant was ineligible for relief as the actual killer, a direct aider and abettor who acted with malice, or a major participant in the underlying felony who acted with reckless indifference to human life."  It further acknowledges that the record "does not establish as a matter of law that appellant acted with malice aforethought," such that appellant "could have been convicted under a vicarious theory of murder liability without proof of malice."  The Attorney General additionally asserts that the trial court erred by making the factual finding that appellant was a major participant who acted with reckless indifference to human life.

We agree with the parties that the record fails to demonstrate appellant's ineligibility for relief as a matter of law. The record shows that the jury was instructed on the natural and

10

probable consequences theory, and its finding that appellant committed first degree murder by means of torture did not establish that it found malice.  At the time of his conviction, "murder by means of torture, a statutorily listed type of first degree murder (§ 189), d[id] not require an intent to kill, but require[d] the intent to torture."  (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 201.)  Furthermore, the record evinces no jury finding that appellant was the actual killer or was a major participant who acted with reckless disregard for human life.  The court acted prematurely in making a factual finding that appellant was a major participant who acted with reckless disregard for human life.  (See *People v. Drayton*, supra, 47 Cal.App.5th at p. 980.)

Although the parties agree remand is necessary, their views of the proceedings required on remand differ.  Appellant contends that we should direct the trial court to issue an order to show cause and hold an evidentiary hearing.  The Attorney General argues that the trial court "should be directed to appoint counsel as appellant requested, allow the parties to brief the issues, and proceed to the second step" of the prima facie review. Appellant replies that the trial court already appointed counsel and held a hearing, and that the Attorney General's concessions demonstrate his entitlement to an order to show cause.

We agree with appellant.  The trial court appointed counsel for appellant, received briefing, and held a hearing before denying appellant's petition for failure to make a prima facie case. We concluded that ruling was in error; appellant made a prima facie case.  Pursuant to section 1170.95, subdivision (c), "[i]f the petitioner makes a prima facie showing that he or she is

11

entitled to relief, the court shall issue an order to show cause." We will direct the trial court to do so on remand.

## II.     Requests for Habeas Corpus and Judicial Notice

In addition to arguing that the trial court erred in denying his section 1170.95 petition, appellant contends that the trial court committed instructional errors during his 1994 trial.  He contends the court erred by instructing the jury on the natural and probable consequences doctrine and by failing to instruct on lesser included offenses.  Appellant requests that we "treat the appeal as a writ of habeas corpus" so that we "can properly resolve this issue now."  He has also filed a request for judicial notice of materials that were not before the trial court deciding his section 1170.95 petition, including the briefs he filed in his direct appeal and the reporter's transcript of his trial.  We deny both requests.

As appellant accurately observes in his opening brief, "It has long been the law in California that, while a Court of Appeal may have original jurisdiction in a habeas corpus proceeding, it has the discretion to deny a petition without prejudice if it has not been first presented to the trial court."  (*In re Kler* (2010) 188 Cal.App.4th 1399, 1403.)  It does not appear that appellant has presented these issues to the trial court.  To the extent that his September 9, 2019 writ petition addressed the issues he seeks to raise here, the trial court denied the petition, and appellant did not file a proper petition seeking review by this court.  We accordingly decline to treat this appeal as a petition for writ of habeas corpus in the first instance.

Moreover, we agree with the Attorney General that appellant's natural and probable consequences claim would not be cognizable on habeas corpus review even if we were inclined to

12

afford writ review. Appellant argues that his murder conviction cannot stand because SB 1437 invalidated the natural and probable consequences doctrine in the context of murder cases. "Those who suffered convictions for murder under the felony murder rule or natural and probable consequences doctrine before SB 1437's enactment can obtain relief under the new law, but only through the petition process" prescribed by section 1170.95. (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 221; see also *People* v. *Martinez* (2019), 31 Cal.App.5th 719, 727-728 (*Martinez*).) Appellant's instant appeal is the proper—and exclusive—vehicle by which he may raise his natural and probable consequences argument.

Appellant argues that *Martinez* "did not rule a petition under section 1170.95 was the exclusive means to have the conviction set aside, . . and specifically noted a habeas petition could be brought under the right circumstances." Appellant misreads *Martinez*. In *Martinez*, the court considered whether a defendant whose direct appeal was pending when SB 1437 became effective could seek resentencing relief in his already pending appeal, without first filing a section 1170.95 petition in the trial court. (*Martinez*, *supra*, 31 Cal.App.5th at p. 722.) The court expressly held that a "defendant must file a section 1170.95 petition in the trial court to seek retroactive relief under Senate Bill 1437." (*Id.* at p. 729; see also *ibid.* ["the section 1170.95 petition procedure is the avenue by which defendants with nonfinal sentences of the type specified in section 1170.95, subdivision (a) must pursue relief"].)"

Ignoring this explicit language, appellant points to a paragraph in *Martinez* in which the court observed that "some defendants may believe themselves able to present a particularly

strong case for relief under the changes worked by Senate Bill 1437 and wish to seek that relief immediately rather than await the full exhaustion of their rights to directly appeal their conviction.  Our holding today does not foreclose such immediate relief in an appropriate case." (*Martinez*, *supra*, 31 Cal.App.5th at p. 729.)  Appellant asserts that this excerpt demonstrates that SB 1437 claims may be pursued on habeas corpus.  It does not.  In the very next paragraph, the *Martinez* court clarifies that a defendant with a pending direct appeal who wishes to immediately file a section 1170.95 petition "retains the option of seeking to stay his or her pending appeal to pursue relief under Senate Bill 1437 in the trial court." (*Ibid.*)  Appellant is not among this limited class of defendants—his direct appeal concluded more than 15 years ago—and requesting a stay of a pending appeal is not analogous to filing a petition for writ of habeas corpus.  *Martinez* does not support appellant's request to treat his appeal as a petition for writ of habeas corpus.  To the extent the alleged instructional errors are relevant to appellant's eligibility for relief under section 1170.95, he may raise them on remand.

Because we decline to treat the appeal as a writ petition, the extra-record materials of which appellant seeks judicial notice are not relevant to our review.  His request for judicial notice accordingly is denied.  (See *People ex rel. Lockyer v. Shamrock Foods* (2000) 24 Cal.4th 415, 422-423, fn. 2.)

## DISPOSITION

The orders summarily denying appellant's section 1170.95 petition are reversed, and the matter is remanded with directions to issue an order to show cause and proceed pursuant to section 1170.95, subdivisions (c) and (d).  The request for judicial notice is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.

15